UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH SUTTON AND BETTY LOU SUTTON, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No.  SA-07-CA-0175-XR |
| VS. | ) ) | |
| ADVANCED AQUACULTURE SYSTEMS, INC. and EMPEROR AQUATICS, INC. | ) ) ) ) ) | |
| Defendants. | | |

**ORDER**

On this date, the Court considered Defendant Advanced Aquaculture Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. After careful consideration, the Court DENIES Defendant's motion (Docket No. 9).

**I.  Factual and Procedural Background**

Plaintiffs Joseph and Betty Lou Sutton ("Suttons"), residents of Kendall County, Texas, originally filed suit in the 216th Judicial District Court of Kendall County, Texas on January 23, 2007.  On February 28, 2007, Defendants Advanced Aquaculture Systems, Inc. ("Advanced Aquaculture"), a Florida corporation, and Emperor Aquatics, Inc. ("Emperor"), a Pennsylvania non-stock corporation, removed this action to this Court on the basis of diversity jurisdiction.  On March 7, 2007, Advanced Aquaculture filed a motion to dismiss for lack of personal jurisdiction.  Because Emperor has not filed a similar motion, the Court will only focus on whether the Court may exercise personal jurisdiction over Advanced Aquaculture.

The Suttons' Original Petition asserted claims for damages allegedly sustained when the lighting, aeration, filtration, circulation and degassing systems designed by Advanced Aquaculture failed to work.  These systems were designed for two ponds the Suttons were building at their home in Boerne, Texas. The failure of these systems allegedly resulted in water "dark with waste, algae, and microorganisms," and the deaths of their eleven koi fish, which are worth up to $25,000 each. The Original Petition asserted five claims against Advanced Aquaculture: (1) deceptive trade practices; (2) common-law fraud; (3) breach of contract; (4) breach of warranty; and (5) negligent representation.

Advanced Aquaculture is the dealer for Emperor's products and does not install the systems it designs.  Advanced Aquaculture argues that the Suttons did not use proper planning and construction procedures when they installed the systems for their two ponds, and it claims that the failure of the systems to work is a result of the Suttons' decision to be architect, engineer and general contractor without the aid of blueprints, technical expertise, certification and licensing required for the project.

## II.  Standard of Review

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the defendant has sufficient contacts with the forum State to warrant the district court's exercise of personal jurisdiction. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the nonmovant need only make a prima facie showing of jurisdiction, and the court must accept as true the nonmovant's uncontroverted allegations and resolve all factual disputes in its favor. *Guidry*, 188

F.3d at 625.  If there are conflicts between some of the facts alleged by the plaintiff and those alleged by the defendant in its affidavits, such conflicts must be resolved in the plaintiff's favor for the purposes of determining whether a prima facie case has been established.  *Id*. at 626.  In resolving a jurisdictional issue, the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof.  *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc*., 963 F.2d 90, 95 (5th Cir. 1992).

A federal district court in a particular state may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law.  *Submersible Systems, Inc. v. Perforadora Central S.A.*, 249 F.3d 413, 418 (5th Cir. 2001).  If the state long-arm statute allows the district court to exercise personal jurisdiction, the exercise of personal jurisdiction must also be proper under the due process clause of the Fourteenth Amendment.  *Id*.  Because Texas courts have construed the Texas long-arm statute to extend to the limits of the Constitution, the Court will focus on the federal due process inquiry.[1]  *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

The exercise of personal jurisdiction is consistent with due process when (1) a nonresident defendant has purposefully availed itself to the benefits and protections of the forum state's laws by establishing minimum contacts with the forum state; and (2) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 867 (5th Cir. 2001). The due process clause ensures that nonresidents receive "fair warning that a particular activity may subject [them] to the jurisdiction of

---

[1]The Texas long-arm statute defines the conduct of business in Texas to include (1) contracting by mail or otherwise with a Texas resident with performance by either party in whole or in part in Texas and (2) commission of a tort in whole or in part in Texas.  TEX. CIV. PRAC. & REM. CODE § 17.042; *Kelso v. Lyford Cay Members Club Ltd.*, 162 Fed. Appx. 361, 363-64 (5th Cir. 2006).

a foreign sovereign." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985).  "[W]hether the minimum contacts are sufficient to justify subjection of the nonresident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo. Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982)). Furthermore, the Fifth Circuit has held that "the number of contacts with the forum state is not determinative, it is indeed one of the relevant factors to be considered within the totality of the circumstances in assessing the propriety of exercising personal jurisdiction over a nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)

A nonresident defendant's contacts with the forum state may support either specific or general jurisdiction. *Wilson*, 20 F.3d at 647.  Specific jurisdiction arises when the "litigation results from alleged injuries that 'arise out of or relate to' those activities" the defendant purposefully directed to the forum state. *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A v. Hall*, 466 U.S. 408, 414 (1984).  For the exercise of specific jurisdiction to be appropriate, the nonresident defendant's activities must have purposefully availed itself to the benefits and protections of the forum's laws, such that it should reasonably anticipate being haled into the forum's courts. *Id*. at 474.  General jurisdiction, on the other hand, is based on a nonresident defendant's contacts with the forum state that are unrelated to the litigation. *Helicopteros*, 466 U.S. at 414.  The exercise of general jurisdiction requires the defendant's contacts to be "sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction." *Stuart,* 772 F.2d at 1191 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778-79 (1984)).

Whether analyzed through the guise of specific or general jurisdiction, "the constitutional

touchstone [of a personal jurisdiction analysis is] whether the defendant purposefully established

'minimum contacts' in the forum State." *Burger King*, 471 U.S. at 472 (citing *International Shoe*

*Co. v. Washington*, 326 U.S. 310, 326 (1945)).  Requiring a defendant to purposefully avail itself to

the benefit and protections of the forum State's laws "ensures that a defendant will not be haled into

a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the

'unilateral activity of another party or a third person.'" *Id*. at 475 (citations omitted).

Even when a defendant has minimum contacts with the forum state, an exercise of personal

jurisdiction must also be reasonable in light of the forum's interest in the litigation in question.

*Submersible Sys*., 249 F.3d at 418 (citing *Asahi Metal Indus. Co., Ltd v. Superior Court of Calif*.,

480 U.S. 102, 113-14 (1987)).  The court must also determine whether maintaining the suit offends

traditional notions of fair play and substantial justice.  *See Shaffer v. Heitner*, 433 U.S. 186, 204

(1977).

### III.  Legal Analysis

In its Motion to Dismiss, Advanced Aquaculture argues that this Court may not exercise

personal jurisdiction over it because: it is a resident Florida Corporation, not a resident of Texas; it

does not maintain a registered agent for service in Texas; it has no continuing or systematic contacts

with Texas; the agreement between Plaintiffs and Defendant specifies in writing that jurisdiction and

venue for any litigation arising out of said agreement is proper in Hillsborough County, Florida; no

corporate representatives, agents, or otherwise of Defendant have been to Texas; the agreement

between Plaintiffs and Defendant was drafted in Florida; out of five hundred sales in Texas[2] made

---

[2] Advanced Aquaculture states that "Out of five hundred (500) sales made by Defendant, Defendant has made only two (2) repeat sales in Texas in the last eight (8) years." The Suttons point out the ambiguity in that language, noting "it seems to be stating that Defendant has had

by Defendant, Defendant has made only two repeat sales in Texas in the last several years;[3] all

contact between Plaintiffs and Defendant occurred by telephone or facsimile; Defendant is the dealer

for the products of co-Defendant, Emperor, and Defendant did not install or deliver the equipment

in question; Defendant has no telephone listing in Texas; Defendant has no warehouse or

manufacturing facilities in Texas; Defendant has never had a bank account in Texas; Defendant owns

no real estate in Texas and has not paid taxes to Texas; and Defendant has no employees or directors

who are permanently assigned to work in Texas.[4]

In response, the Suttons argue that the minimum-contacts requirement was met because

Advanced Aquaculture entered into a contract with a Texas resident, solicited the contract with the

Suttons via numerous telephone calls to and from Texas and through several letters sent via U.S.

mail or facsimile to the Suttons in Texas, and substantially negotiated and performed the contract

in Texas. The Suttons also allege that Advanced Aquaculture made actionable misrepresentations

directed to the Suttons, in Texas, by telephone, facsimile, and through the mail and that the damages

were sustained in Texas. The Suttons argue Advanced Aquaculture's contacts with Texas are

systematic and continuous and cite the sales in Texas and an agreement with the Suttons to provide

---

500 sales *in Texas* in the last eight years." The Court will assume that all 500 sales occurred in Texas because of the ambiguity of the statement and Advanced Aquaculture's failure to clarify.

[3]These two repeat sales include a sale for $4,900.00 in September of 2003 and a sale of $430.00 in May of 2006.

[4] Several arguments advanced by Advanced Aquaculture relate to general jurisdiction, not specific jurisdiction. The Court's denial of Advanced Aquaculture's motion to dismiss for lack of personal jurisdiction is premised on its conclusion that specific jurisdiction exists because the Suttons' claims "arise out of or relate to" those activities that Advanced Aquaclture purposefully directed at Texas. The Court is not holding that the contacts discussed in this Order are sufficient to confer general jurisdiction over Advanced Aquaculture.

future support for their project.

The Court will address the following issues with respect to the exercise of personal jurisdiction: (A) the contract and tort claims arise from contacts that constitute purposeful availment of the laws of Texas, thereby establishing specific jurisdiction; (B) the forum selection clause does not require the case be heard in Hillsborough County, Florida; and (C) the assertion of personal jurisdiction over Advanced Aquaculture is consistent with the due process clause of the Fourteenth Amendment.

**A.      The Court finds that Advanced Aquaculture has sufficient minimum contacts with Texas to support the exercise of personal jurisdiction.**

In *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, the Fifth Circuit provides an extensive minimum-contacts analysis that included consideration of contacts with the forum state involving both a tort claim and a contract claim. 754 F.2d 542 (5th Cir. 1985). In *D.J. Investments*, the defendant ("Metzeler") challenged the exercise of personal jurisdiction in Texas. The Fifth Circuit focused on the following contacts with Texas: (1) telephone conversations with Texas-based D.J.Investments, some of which were initiated by Metzeler; (2) the agent of Metzeler met with D.J. Investments in Texas; (3) partial performance of the contract (the mailing of a distributorship agreement) was to take place in Texas; and (4) the parties did not provide for the possibility that Metzeler might have to defend a suit in Texas with a choice of law provision or other device. *Id*. at 547.  D.J. Investments asserted claims for breach of contract and common law fraud. *Id*. at 543. It claimed that it contracted with Metzeler for the transfer of his exclusive tire distribution rights in Texas as part of a larger transaction where D.J. Investments would acquire other assets of Metzeler. *Id*. at 544. In consideration of the transfer of the distributorship rights, D.J. Investments posted an irrevocable letter of credit on a Texas bank. *Id*. Both the contract claim and the tort claim

arise from these contacts.  D.J. investments did not receive the distributorship rights, and it claimed

that the contract and communications involving the contract provided for such a transfer.[5] *Id*. at 547-

58. The Fifth Circuit stated that "the instant cause of action for breach of contract and fraud is related

directly to the tortious activities which [D.J. Investments] cites as contacts which give rise to

personal jurisdiction." *Id*. at 548.

Advanced Aquaculture's contacts with Texas are similar to those of Metzeler in *D.J.*

*Investments*. Advanced Aquaculture negotiated the contract via telephone, fax and mail with the

Suttons who were located in Texas. Some of these communications were initiated by Advanced

Aquaculture and were directed at the Suttons in Texas. Partial performance of the contract was to

take place in Texas, and the shipment of the contracted pond equipment was directed at Texas and

the design was for a system to be installed on the Suttons' property in Texas. Furthermore, the

relationship with the Suttons is ongoing because Advanced Aquaculture has agreed to provide

further technical support for the project and the Suttons have made only a down payment on the

entire contractual amount. The payment already made by the Suttons was by check drawn from a

Texas bank.

The pre-contract communications in the instant case appear to be at least as extensive as

those in *D.J. Investments*. Advanced Aquaculture negotiated over about nine months with the

Suttons and submitted at least three progressively more expensive quotes for the system to be

installed on the Sutton's property. The quotes include changes to the equipment necessary to achieve

the results for which the Suttons contracted. This case is not one where a resident contracts with a

---

[5]These other communications involving the contract consisted of allegedly fraudulent
statements in telephone calls assuring that the distributorship would be transferred.

nonresident defendant for the delivery of a ready-made product out of a catalog, with no other contacts. The level of negotiation in this case and apparent tailoring of the system to the specific situation of the Suttons and their Texas property are factors, when considered in addition to the contacts listed above, that support the conclusion that Advanced Aquaculture knowingly availed itself of the laws of Texas. Like the Fifth Circuit in *D.J. Investments*, this Court does not hold that the breach of contract claim supports exercise of personal jurisdiction standing alone; rather, the breach of contract claim must be considered in conjunction with the fraud claim arising from the same set of contacts.

The Suttons also allege that Advanced Aquaculture committed tortious acts by engaging in common law fraud, negligent representation, and deceptive trade practices. The United States Supreme Court held that a single act directed at the forum state that gives rise to a cause of action can support a finding of minimum contacts. *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, minimum contacts were found based only upon a claim of libel against a nonresident journalist. The Court held that because the defendant's conduct was intentional, allegedly tortious, and the defendant knew the harm would occur in the forum state, the defendant should "reasonably anticipate being haled into court." *Id*. at 789-790. The Fifth Circuit has since analyzed the *Calder* holding and applied its reasoning to a claim of fraud. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999). The Court found minimum contacts where the nonresident defendant communicated via letters, telephone calls, and faxes with the plaintiff and the content of that communication included the alleged fraudulent statements. *Id*. at 212. The plaintiff alleged, in a sworn affidavit, that these communications contained assurances that were "at the heart of the lawsuit," namely, that the delivery of plaintiff's shares of stock, which were in the custody of the defendant, would occur on

a particular date, but there was no delivery. *Id*. The Court clearly articulates the general proposition, stating, "when the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Id*. at 213.

Therefore, if the Suttons have stated a case for fraud, where the claim arose out of the content of communications made by Advanced Aquaculture to the Suttons, then this constitutes purposeful availment of the laws of Texas and sufficient minimum contacts to extend personal jurisdiction.

In a fax to the Suttons, Advanced Aquaculture claimed the three skids used in the project were "pressure tested, preassembled and pre-wired." AASI-000052. The Suttons allege in 4.12(h) of their complaint that the skids were not pressure tested because they never worked properly.

In a letter to the Suttons, Advanced Aquaculture claimed "you will be assured of saturated oxygen levels throughout both ponds . . . ." AASI-000047. The Suttons allege in 4.12(b) of their complaint that oxygen saturation has not occurred as represented.

In 4.12(j), the Suttons allege the systems are not functional and in 4.12(a) that operation and maintenance is "far from simple." In a letter to the Suttons, Advanced Aquaculture claimed the system would be "functional and trouble free . . . ." AASI-000048.

These and other of the allegations in the complaint constitute a prima facie case of fraud and breach of contract. Furthermore, it is clear from the record that Advanced Aquaculture knew the Suttons were in Texas and that any harm resulting from such communication would occur in Texas. In *D.J. Investments*, the Fifth Circuit, in considering a tort claim based on allegedly fraudulent statements made in connection with a contract, ruled similarly: "[W]e considered the commission of an intentional tort, the injurious effect which was felt in the forum state, to be a factor supporting jurisdiction in the forum state." *Id*. at 549 (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333-

34).  The Fifth Circuit in *D.J. Investments* asserted jurisdiction over the entire matter where the same set of contacts gave rise to both the fraud and breach of contract claims.

The Fifth Circuit recently revisited this issue.  In *Seiferth v. Helicopteros Atuneros, Inc.*, the Fifth Circuit held that personal jurisdiction is claim specific, but where there are "multiple claims that arise out of *different* forum contacts, [the party asserting jurisdiction] must establish specific jurisdiction for each claim." 472 F.3d 266, 274 (5th Cir. 2006) (emphasis added). In both *D.J. Investments* and this case, a single set of forum contacts gave rise to both claims. In *Seiferth*, the Fifth Circuit stated that "if a plaintiff's claims relate to *different* forum contacts of the defendant, specific jurisdiction must be established for each claim." *Id.* at 275 (emphasis added). Seiferth brought four claims in the suit: defective design, failure to warn, negligence, and negligence per se. *Id.* at 274. The Court found that the first claim arose from Mark Camus' design work on a platform from which Seiferth fell, and the remaining three claims arose from Camus' contacts with Mississippi, the forum state. *Id.*  Because none of the Mississippi contacts related to Camus' design of the platform, which was not designed or manufactured in Mississippi, the Fifth Circuit held that the design defect claim did not arise from Camus' contacts with Mississippi and was properly dismissed for lack of jurisdiction. *Id.* at 275.  Regarding the remaining three claims, the Fifth Circuit concluded that Camus directed his activities at Mississippi and purposefully availed himself of the privileges of conducting activities there and that Seiferth's claims of failure to warn, negligence, and negligence per se arise out of Camus' Mississippi contacts. *Id.* at 276. In so doing, the Fifth Circuit exercised jurisdiction for only certain claims that arose from Camus' contacts with Mississipppi, the forum state.

The Fifth Circuit in *Seiferth* considered this issue as one of first impression in the Fifth

Circuit. *Id*. at 274. As such, the Court did not address multiple claims arising from the *same* set of

contacts. This Court does not extend *the Seiferth* requirement to establish jurisdiction for each claim

to cases where all claims arise from the same contacts. This is consistent with the general principle

that jurisdiction is properly asserted over claims when the *contacts* meet the minimum contact

standard.   Because this Court has determined that Advanced Aquaculture's contacts meet that

standard, it may assert jurisdiction over all related claims arising under them.

However, the Court also notes there are differences between Metzeler's and Advanced

Aquaculture's contacts with Texas. In *D.J. Investments,* the Fifth Circuit considered Gregg's trip to

Texas among the contacts in that case.  There is no assertion that an agent of Advanced Aquaculture

traveled to Texas. Yet, this is not enough to prevent the assertion of personal jurisdiction. The Fifth

Circuit has stated that "[i]t is well settled that specific jurisdiction may arise without the nonresident

defendant's ever stepping foot upon the forum state's soil." *Bullion*, 895 F.2d 216 (citing *Burger*

*King*, 471 U.S. at 474-5).

Another difference between Metzeler's and Advanced Aquaculture's contacts is the relevance

of a choice of law provision. There was no such provision at issue in *D.J. Investments*. However,

Advanced Aquaculture asserts that there is a forum-selection clause that indicates Hillsborough

County, Florida as the proper venue. The Court will now address this issue.

**B.      The Court finds that Advanced Aquaculture's forum selection clause is permissive
because it does not require that the case be heard in Florida**.

In its motion, Advanced Aquaculture argues that "the agreement between plaintiffs and

defendant specifies in writing that jurisdiction and venue for any litigation arising out of said

agreement is proper in Hillsborough County, Florida."  The actual language of the forum selection

clause is found in Advanced Aquaculture's "Limited Warranty And Terms And Conditions of Sale:"

> This contract shall be construed and performed in accordance with laws of the State of Florida and jurisdiction and venue for any litigation arising out of it *may* be laid in Hillsborough County, Florida.

AASI-000011[6] (emphasis added).  Advanced Aquaculture alleges that it sent this document to the

Suttons with an invoice for the "Automated Pond Filtration System"on December 6, 2004.  AASI-

000010.  The following week, on December 13, 2004, the Suttons sent Advanced Aquaculture a

check for the system.  AASI-000012.

> In Plaintiff's Response to Defendant's motion, the Suttons state the following:

> AASI [Advanced Aquaculture] has produced a document appearing to be an order that it contends is a contract with Plaintiffs. [It is attached to the affidavit of AASI's President Dana Kent, which is attached to AASI's Special Appearance in the removed state court action.] Plaintiffs do not recall ever receiving that document and it is not signed by them.  The parties did have an oral contract, which was negotiated over the telephone in both Florida (by AASI) and Texas (by Plaintiff Joseph Sutton).

Pl. Resp. 4.

A factual dispute exists as to whether the Suttons received this document  ("Limited

Warranty And Terms And Conditions of Sale") from Advanced Aquaculture.  If there are conflicts

between some of the facts alleged by the plaintiff and those alleged by the defendant in its affidavits,

such conflicts must be resolved in the plaintiff's favor for the purposes of determining whether a

prima facie case has been established.  *Guidry*, 188 F.3d at 626.  However, this Court need not to

address what difference, if any, it would make if the Suttons had not received this document because

this Court has determined that the forum selection clause is permissive–not mandatory–since it does

not demonstrate the parties' intent to make Hillsborough County, Florida the exclusive jurisdiction

for a suit.  *City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004) (citing

---

[6]Advanced Aquaculture has attached these documents to its Rule 26(a)(1) Disclosures of Defendant as Exhibit "A," with bates stamped numbers AASI-000001 to AASI-000108.

*Keaty v. Freeport Indonesia, Inc*., 503 F.2d 955, 956 (5th Cir. 1974)).

A party that consents to jurisdiction in one forum does not automatically waive its right to have an action heard in another. *City of New Orleans*, 376 F.3d at 504. According to the Fifth Circuit, "for a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *Id*. (citing *Keaty*, 503 F.2d at 956). In addition, a forum selection clause "subject to opposing, yet reasonable, interpretations" should be construed against the drafting party. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994) (citing *Keaty*, 503 F.2d at 957). Here, Advanced Aquaculture drafted the forum selection clause; therefore, the clause should be construed against Advanced Aquaculture. Finally, the Second Circuit has specifically construed clauses that state where jurisdiction "may" be proper as permissive clauses. *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993).

Thus, Advanced Aquaculture's forum selection clause is permissive, not mandatory, and this action may be heard in a forum other than Hillsborough County, Florida.

**C.      The Court finds that the exercise of personal jurisdiction over Advanced Aquaculture is not a violation of the due process clause of the Fourteenth Amendment**.

Because Advanced Aquaculture has minimum contacts with Texas, this Court must now consider whether the assertion of personal jurisdiction offends traditional notions of fair play and substantial justice as required by the due process clause of the Fourteenth Amendment. Once there has been a determination that the defendant purposefully directed its activities at the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's

interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal,* 480 U.S. at 113.; *World-Wide Volkswagen*, 444 U.S. at 292.

These factors largely support the assertion of jurisdiction in Texas for this matter. With regard to the burden on Defendant, this Court has determined that it does not outweigh the other factors.  Advanced Aquatics has not presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  Accordingly, the assertion of personal jurisdiction is consistent with the due process clause of the Fourteenth Amendment.[7]

### IV.  Conclusion

This Court has concluded that the contacts giving rise to the related contract and tort claims satisfy the minimum contacts test and that the assertion of personal jurisdiction over Advanced Aquaculture does not violate the due process clause of the Fourteenth Amendment.  The Court therefore finds that the assertion of personal jurisdiction over Advanced Aquaculture for these claims is proper.  Advanced Aquaculture's motion to dismiss for lack of personal jurisdiction is DENIED.

SIGNED this 31st day of July, 2007.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[7]The Court express no opinion on whether the Suttons' contract and fraud claims have any merit. The Court holds only that, based on the totality of these facts, an adequate prima facie showing was made that Advanced Aquaculture has sufficient contacts with Texas for this Court to exercise personal jurisdiction.